Francisco Acuña Aybar, demandante y apelante, *v.* Junta de Retiro de los Funcionarios y Empleados del Gobierno Insular, etc., demandados y apelados.

Núm. 8073.—*Sometido:* Febrero 14, 1941. *Resuelto:* Febrero 21, 1941.

*Rafael Soltero Peralta,* abogado del apelante; *Hon. Procurador General George A. Malcolm y Jesús A. González, Procurador General Auxiliar,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El demandante apelante, Francisco Acuña Aybar, alega que durante 28 años consecutivos fué empleado del Pueblo de Puerto Rico, hasta que en junio 30 de 1929 se le separó invo-

luntariamente del servicio, por haber sido suprimida en la ley de presupuesto para el año 1929–1930 la plaza que había venido ocupando; que al empezar a regir la Ley núm. 22 de septiembre 22 de 1923 ((2) pág. 157), el demandante se acogió a sus beneficios y al aprobarse en septiembre 2, 1925, la nueva ley, número 104 de ese año, (pág. 949), el demandante quedó comprendido dentro de sus disposiciones; que de acuerdo con las secciones 3, 5 y 8 de la citada Ley núm. 104 de 1925, en la fecha en que fué retirado del servicio, el demandante tenía ya adquirido el derecho a retirarse voluntariamente con una pensión o renta vitalicia de 560 dólares anuales; que por haber sido separado del cargo involuntariamente y no habérsele notificado la cesantía con un término razonable de anticipación, el demandante no tuvo una oportunidad para solicitar su pensión mientras estaba en servicio activo y se vió obligado a solicitarla cuando ya estaba fuera del servicio; que la junta demandada, amparándose en lo dispuesto en la sección 3 de la citada ley, le denegó la pensión.

Los fundamentos legales de la petición de *mandamus* radicada por el apelante ante la Corte de Distrito de San Juan son:

(*a*) que las disposiciones de la sección 3 de la Ley núm. 104 de 1925 no son aplicables a casos de retiro por separación involuntaria.

(*b*) que la junta procedió en forma arbitraria y contraria a los propósitos esenciales de la Ley de Retiro.

(*c*) que la acción de la junta ha privado al demandante de su pensión anual desde junio 30, 1929, a la fecha de la demanda, por un total de $5,133.33; y que el demandante continuará siendo privado de su pensión, a menos que la junta sea obligada por decreto judicial a pagársela.

(*d*) que la junta demandada cuenta con fondos suficientes para hacer el pago de las sumas que adeuda al demandante.

Los demandados alegaron por vía de excepción previa que la demanda no aduce hechos suficientes para constituir causa de acción. La corte de distrito declaró con lugar la excepción previa y desestimó la demanda. El demandante apeló y alega que la corte inferior erró al declarar que el

demandante tuvo tiempo razonable para solicitar su pensión antes de cesar en su empleo; al declarar con lugar la excepción previa, fundándose para ello en materia de prueba y desatendiendo las alegaciones de la demanda; y al declarar que la demanda era fatalmente defectuosa.

■■ La corte inferior procedió a resolver el caso bajo la impresión errónea de que la solicitud de pensión del peticionario se basa en la sección 9 de la Ley núm. 104, supra. En el párrafo 6 de su demanda, el peticionario hace constar específicamente que su alegado derecho a ser pensionado emana de las disposiciones de las secciones 3, 5 y 8 de la citada ley. Es cierto que la citada sección 9 es aplicable a reclamaciones de pensión en casos de separación involuntaria, pero es cierto también que, de acuerdo con los términos claros y precisos del estatuto, para que pueda prosperar una reclamación en caso de separación involuntaria el empleado reclamante debe alegar y probar (a) que tiene cuarenta o más años de edad; (b) que fué separado del servicio involuntariamente, mas no por destitución; (c) que al tiempo de ser separado había servido por un período total no menor de quince años; y (d) que fué separado antes de tener derecho al retiro. El peticionario en el presente caso no podía basar su reclamación en la citada sección 9, porque en la fecha en que se le retiró del servicio ya él tenía derecho a reclamar su retiro, a tenor de lo dispusto en las secciones 3, 5 y 8 de la Ley núm. 104. Admitidas por la excepción previa las alegaciones de la demanda al efecto de que el demandante "fué empleado en servicio activo del Gobierno Insular de Puerto Rico durante 28 años consecutivos," es indudable que con anterioridad a la fecha en que fué separado involuntariamente del servicio el demandante tenía derecho a solicitar su retiro de acuerdo con la sección 8 de la ley, la cual concede ese derecho a cualquier funcionario o empleado que haya prestado por lo menos veinte años de servicios.

■ La única cuestión a resolver es: ¿Perdió el empleado demandante su derecho adquirido al retiro, por no

haber solicitado el retiro voluntario antes de ser separado involuntariamente del servicio?

La sección 3 de la Ley núm. 104, que es la que concede el derecho al retiro con renta vitalicia, por razón de edad, inhabilidad física o número de años de servicio, dispone ''que no tendrán derecho a pensión alguna aquellas personas que no estuvieren en servicio activo en la fecha en que soliciten su pensión.''

La corte inferior resolvió que la demanda es fatalmente defectuosa porque en ella se dice que el empleado demandante no solicitó su pensión hasta después de haber sido separado de su empleo involuntariamente. El demandante alega en su demanda que no se le notificó su cesantía con un término razonable de anticipación para que él pudiera solicitar su pensión mientras permanecía en servicio activo. La corte inferior, después de considerar las razones que tuvo el demandante para no solicitar la pensión mientras estaba en el servicio, se expresó así:

''...En la demanda se trata de excusar el cumplimiento de esa obligación diciendo que no se le dió notificación de su cesantía con un término razonable de anticipación dentro del cual él pudiera solicitar su pensión mientras permanecía en servicio activo; en el supuesto no admitido que bajo circunstancias excepcionales y extraordinarias, como el caso de un peticionario que inesperadamente y sin previo aviso se viera fuera de su cargo, pudiera dejarse de cumplir con esta obligación legal, estamos convencidos que éste no pudo ser jamás el caso del demandante; éste dice que cesó por mandato legislativo en junio 30 de 1929; si su plaza fué suprimida por el presupuesto, tenemos entonces que la Ley núm. 51 de 1929, proveyendo asignaciones para el sostenimiento del gobierno en el año económico que terminaría el 30 de junio de 1930 (Leyes de ese año, pág. 275) fué aprobada por el Gobernador en mayo 2 de 1929, desde cuya fecha ya estaba obligado legalmente a tener aviso, de que cesaría el último día del año económico, teniendo, por tanto, tiempo suficiente, casi dos meses, para ejercitar su derecho si hubiera sido diligente. No tenemos conocimiento de que su puesto fuera suprimido por alguna ley especial, pero aunque lo hubiera sido, tomamos conocimiento judicial de que de acuerdo con la sección 33 de la Ley Orgánica la

Legislatura cerró sus sesiones en abril 15 de 1929, por lo que el Gobernador, de acuerdo con la sección 34 de la misma ley, solamente tuvo treinta días para firmarlo a contar de esa fecha, por lo que necesariamente tuvo que convertirse en ley a más tardar en mayo 15 siguiente, teniendo, por tanto, en este último caso, mes y medio para solicitar su pensión.''

No estamos conformes con las anterires conclusiones. Al demandante no se le puede imputar que antes del 30 de junio, 1929, fecha en que se le comunicó su cescantía, tuviera conocimiento de la ley de presupuesto, especialmente si se tiene en cuenta que ésta no empezó a regir hasta el primero de julio de 1929. ''No existe ninguna presunción de que todos los hombres conocen la ley. La máxima 'se presume que un hombre conoce la ley' es un dicho trivial y sentencioso, que no es en manera alguna universalmente cierto. Ignorancia de la ley no excusa a las personas para librarlas de las consecuencias de sus actos, tales como el castigo por ofensas criminales.'' *Municipal Metallic Bed Mfg. Corp.* v. *Dobbs*, 253 N. Y. 313, 171 N. E. 75, 68 A.L.R. 1376. Véase: *Bouvier's Law Dictionary*, Vol. 2, pág. 1490, y 10 R.C.L. pág. 874, nota 12.

En el presente caso, el hecho alegado y aceptado por la excepción previa es que el demandante no tuvo conocimiento de su cesantía hasta el 30 de junio, cuando ya era tarde para solicitar la pensión mientras estaba en servicio activo. La corte inferior no estuvo justificada al asumir o presumir que el demandante supo antes del 30 de junio que en la nueva ley de presupuesto se había suprimido su plaza. Debemos, pues, considerar y resolver la cuestión planteada sobre la base de que el demandante no tuvo conocimiento de la supresión de su plaza hasta el día antes de empezar a regir el nuevo presupuesto.

El caso de *Acosta* v. *Junta de Retiro*, 42 D.P.R. 828, citado por la corte inferior en apoyo de la sentencia recurrida, puede distinguirse fácilmente del de autos. José J. Acosta, quien ocupó el cargo de fiscal de distrito, radicó una solicitud

de pensión de acuerdo con la sección 9 de la ley, basando su petición en que tenía más de cuarenta años de dad, había prestado servicios por más de 15 años y había sido separado involuntariamente de su cargo antes de haber adquirido el derecho a retiro. Su petición fué radicada más de año y medio después de haber expirado el término de cuatro años para el cual había sido nombrado. La razón fundamental que tuvo esta Corte Suprema para confirmar la sentencia denegatoria del auto de mandamus solicitado por Acosta, fué que el peticionario había sido nombrado por un término de cuatro años, y desde la fecha de su nombramiento "sabía que *cesaría* en su cargo al cabo del término por el cual fué nombrado." Acosta tuvo tiempo sobrado para haber solicitado su pensión mientras estuvo en servicio activo y no lo hizo; y esperó año y medio para formular su petición, sin ofrecer excusa o razón alguna para justificar su falta de diligencia.

El peticionario en el presente caso ha servido como empleado público, sin término fijo, durante un período de 28 años consecutivos. Su nombramiento, que había de continuar indefinidamente mientras él observase buena conducta o se retirase voluntariamente del servicio, no le dió aviso, como en el caso del fiscal Acosta, de una fecha determinada y fatal en que habría de cesar en su cargo por expiración del término por el cual fué nombrado.

La jurisprudencia sostiene de manera uniforme que las leyes que crean el derecho a disfrutar de una pensión deben ser interpretadas liberalmente, a fin de que se cumpla el propósito del legislador; y que la fuerza y efecto de dichas leyes no deben conformarse estrictamente a los términos literales del estatuto. *Walton* v. *Cotton,* 60 U. S. 355; *Hanscom* v. *Malden etc. Gas Light Co.,* 220 Mas. 1, 107 N. E. 426; *O'Dea* v. *Cook,* 176 Cal. 659; '48 C. J. sec. 4, pág. 787.

Siendo el propósito humano de toda ley de pensiones compensar y ayudar en su vejez o inhabilidad a aquellas personas que durante un número de años han servido fielmente a la comunidad y han contribuído con parte de su

sueldo a formar y sostener el fondo para el pago de pensiones, no podemos concebir que al suprimir en la ley de presupuesto la plaza de un empleado que ha rendido servicios durante veintiocho años, consecutivos, la Asamblea Legislativa de Puerto Rico tuviera la intención de privar a ese empleado de su derecho a reclamar su pensión, por el solo hecho de no haber cumplido con una condición que se le hizo imposible cumplir por la misma ley. Una interpretación estricta del estatuto, dentro de los hechos alegados en la petición y admitidos por la excepción previa, equivaldría a privar al peticionario de su derecho a ser pensionado, sin el debido proceso de ley, y haría que el estatuto fuese anticonstitucional en su aplicación.

No sabemos si el puesto que ocupaba el demandante en el servicio del Gobierno era único en su clase o si había en el presupusto anterior varios empleados en el mismo servicio, con iguales sueldos y denominaciones. Sobre este punto nada dicen las alegaciones. Si en el nuevo presupuesto se suprimieron una o más plazas de un grupo de igual denominación y la designación de los empleados que habían de ser separados del servicio dependía del jefe del departamento, el demandante no estaba obligado a saber que su plaza había quedado suprimida, hasta que recibió la comunicación oficial de su cesantía. La comunicación hecha el día antes de tener efecto la cesantía no dió al demandante un término razonable para reclamar su pensión estando aún dentro del servicio.

Considerados los hechos alegados y admitidos por la excepción previa y dando a la ley la interpretación liberal que estamos obligados a darle para que se cumpla el propósito del legislador, resolvemos que las disposiciones de la sección 3 de la Ley núm. 104 de septiembre 2 de 1925, que requieren que la solicitud de pensión sea hecha mientras el empleado está en servicio activo son aplicables a los casos de retiro voluntario; y que no lo son cuando el empleado es separado involuntariamente del servicio, después de haber ad-

quirido el derecho a solicitar su retiro voluntario con pensión vitalicia, a menos que la Junta de Retiro alegue y pruebe que el empleado reclamante tuvo una oportunidad o término razonable para solicitar su pensión antes de que su cesantía tuviera efecto y no fué diligente en la reclamación de su derecho.

*Por las razones expuestas debe revocarse la sentencia que dictó la Corte de Distrito de San Juan en 29 de julio de 1939 y devolverse el caso a dicha corte para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Todd, Jr., no intervino.