Gerald Nolan, J.
This proceeding is brought pursuant to. section 3-324 of the Village Law to determine the validity of an election held to decide the question of incorporation of the proposed Village of Purchase in the Town of Harrison. The election was held on August 17,1967, and resulted in the defeat of the proposal to incorporate, by a vote of 136 to 134.
It is asserted by the petitioners that the election was irregular and invalid for a number of reasons. Concededly the Town Clerk of the Town of Harrison kept the registration list open to public inspection and made additions thereto on August 14; 15 and 16. Petitioners claim that 30 additional persons were registered on the 15th and 16th. Respondents concede that on those dates 17 names were added to the registration list. It is further alleged that the Inspectors of Election (the Town Supervisor and the Town Clerk) failed to properly supervise and conduct the election, in that they permitted electioneering by opponents of incorporation in and about the polling place and within 100 feet thereof, they allowed unauthorized persons to enter the voting booth with voters, that they permitted intimidation of voters by persons opposed to incorporation, and permitted confused, crowded, noisy and chaotic conditions to. exist at the polling place. These allegations are denied. Concededly, however, sample ballots were not provided, nor were there any distance markers as required by sections 249 and 254 of the Election Law. It is also not disputed that the Comptroller of the Town of Harrison prepared, published and distributed what purported to be an estimated budget, for the proposed Village of Purchase, and it is claimed that it grossly exaggerated the cost of operation of the proposed village, and was calculated to mislead the voters into the belief that in the event of incorporation their taxes would be greatly increased. Concededly also, however, the proponents of incorporation prepared and circulated to the voters their own esti *1051 mated' budget, which purported to show that incorporation would not cause any substantial increase in the tax rate. It is also conceded that the Town Supervisor published and distributed to the voters a letter in which he strongly opposed incorporation, and it is asserted that this letter was calculated to mislead and to intimidate the voters.
■ Although the pleadings present issues of fact with respect to the claimed irregularities in the conduct of the election, and with respect to alleged improper conduct of the Supervisor and the Town Comptroller, the parties have elected not to present oral proof in support of their respective allegations. Consequently, the determination of the questions presented must be made on the basis of the conceded facts.
Unquestionably the proposed incorporation was a matter of great public interest in the territory affected, and the papers presented leave no doubt that the qualified voters were sharply divided in their opinions as to the merit of the proposed incorporation, that they organized to support and to oppose the proposition, and vigorously campaigned for and against it. Watchers were appointed to act in behalf of each group, who attended at the polling place, and were active in behalf of those whom they purported to represent. Nevertheless, despite the claim that the registration lists were kept open, and added to illegally on the two days prior to the election, neither the petitioners nor anyone else protested the practice adopted, insofar as the papers disclose, and coneededly no voter was challenged at the election on the ground that his name had been added to the registration list after the list was required by law to be closed. Apparently, before and during the election, everyone concerned was content with the practice adopted, considered it legal, and was prepared to abide by the result.
Unquestionably there were irregularities in the conduct of the election in the failure to furnish sample ballots and to put out distance markers, and opinions as to the qualifications of voters may have been forcibly expressed, and some improper electioneering may have occurred. The papers presented do not establish, however, that any voter was actually intimidated, and it does not appear that any qualified voter was prevented from voting or that any person who was not a qualified voter was permitted to vote. The Supervisor’s letter, although ' expressing strong opposition to incorporation, for reasons stated therein, can hardly be considered intimidation, and there is no proof that it contains any false statements of fact, or that the opinions stated were not advanced in good faith. The same may be said of the Comptroller’s estimated budget, which *1052 reflected merely his opinion as to expenses which might be incurred. With respect to the admitted irregularities, it was conceded on argument that none of them was sufficient, standing alone, to invalidate the election. It is the court’s opinion that their cumulative weight should have no greater effect. Although petitioners should be entitled to relief if they have made a showing of facts sufficient to justify a reasonable belief that any of the irregularities referred to affected or could have affected the result of the election (cf. People v. Cook, 8 N. Y. 67, 93; Matter of McGuiness v. DeSapio, 9 A D 2d 65), no such finding may be made on the papers presented.
The questions remain, however, whether the keeping of the registration list open for public inspection, and the making of additions thereto on August 15 and 16 were violations of the controlling statutes and, if so, whether they require the invalidation of the election.
The procedure governing the registration of voters, and the conduct of elections with respect to the incorporation of villages, is provided by article 3 of the Village Law. Personal registration of voters is not required. Each resident owner of real property in the territory, qualified to vote for town officers, may vote, provided his name appears on the registration list (Village Law, §.§ 3-316, 3-318, subd. 4) which must be prepared by the Town Clerk and filed in his office at least 10 days before the election. The list is required to be prepared by copying from the last completed assessment roll of the town the names of all persons shown thereon as owning real property in the affected territory, and by modifying and supplementing it according to information as to changes - in ownership supplied to the assessing officials by the county since the completion of the last assessment roll, and acquired by reference to the town register or the registration poll records, for the last preceding general election in a county where permanent personal registration has been established. The Clerk may also employ any other method which will result in a more accurate list. From the list thus prepared there must be deleted the names of all such owners of property not listed in the town register or the registration poll records. (Village Law, § 3-318, subd. 1). However, additions may thereafter be made to the list as provided in subdivision 2 of section 3-318 of the statute, which provides as follows: “ At least three days prior to such election and not on a Sunday the registration list for such election shall be open for inspection by the public in the office of the town clerk preparing same between the hours of twelve o’clock noon and nine o’clock in the evening where *1053 and when any person claiming to be qualified to vote at such election whose name is not included in the registration list of voters therefor may apply to such clerk for a revision of such list to include his or her name. The clerk, upon presentation of proper proofs showing that such person is an owner of real property in such territory and town and is or will at the time of such election be qualified to vote for town officers of such town as a resident of such territory, shall revise such list to include the name of such person.”
It may be noted that the list may be opened for inspection and for additions thereto more than three days prior to the election, and that the statute does not expressly provide that it must be closed at least three days prior thereto. Neither does it, by subdivision 2, specifically place any time limit on the addition by the Clerk, of the names of property owners who will be qualified to vote on the day of election. Clearly, also, such property owners need not be listed in the town register, or in the registration poll records for the last preceding general election. All that is required is that they be resident property owners, who are, or will be qualified, to vote for town officers at the election (Village Law, §§ 3-316, 3-318).
Notice of the availability of the list for inspection and additions is required by subdivision 3 of section 3-318, which provides for notice by the Town Clerk: “that a registration list of voters qualified to vote at such election will be available for inspection in his office between the hours of twelve o’clock noon and nine o ’clock in the evening on a day specified therein which day shall not be on a Sunday and shall be at least three days prior to such election; that at said time and place said list will be available for inspection by the public; and also that at said time and place persons claiming to be qualified to vote at such election whose names are not on such list may, upon presentation of proper proofs, have their names added thereto.”
It is petitioners’ position that the statute mandates that the registration list be closed, at least three days before the election, and that the Town Clerk was without authority to add to the list the names of voters, which were concededly added on August 15 and 16. No complaint is made with respect to the names added on the 14th, which was 11 at least three days prior to such election” (General Construction Law, § 20; People v. Burgess, 153 N. Y. 561, 573; H. E. & S. Transportation Corp. v. Checker Cab Sales Corp., 271 N. Y. 239, 242, 243).
Respondents, on the other hand, assert that the statute should be construed as permitting the list to be kept open on the 15th *1054 and 16th of August, and that the provisions with respect to the opening of the list for inspection and for the addition of the names of qualified voters 1 ‘ at least three days ’ ’ and “ on a day specified " * * which * * * shall be at least three days ’ ’ prior to the election, prescribe only the minimum requirements which must be observed, and authorize the Clerk to add the names of qualified voters to the list on any day prior to the election on which the voters may be notified that such action will be taken. It is not disputed that notice was given, purportedly pursuant to subdivision 3 of section 3-318, that the registration lists would be open for inspection and that the names of qualified voters would be added thereto on August 14, 15 and 16.
Both petitioners and respondents agree, as they must, that the statute must be interpreted in accordance with the legislative intent, which must be determined on consideration not only of the language of the statute, but also of the purpose for which it was enacted. So considered, the intent of the Legislature, although it could have been more definitely expressed, appears to be reasonably clear. It was obviously intended to give the qualified voters in the affected territory an adequate opportunity to express their views on the question presented, but by providing for registration, which could have been dispensed with (see 1ST. Y. Const., art. II, § 5 and Election Law, § 163), and that no person could vote whose name did not appear on such lists, the Legislature also obviously intended to provide for the identification of such voters for the benefit of interested persons at some time prior to the election. Since the Legislature had provided the manner in which the lists were to be prepared and revised, that method only was required to be followed, and no person could be registered except as authorized by the statute. While it is true that subdivision 2 of section 3-318 of the Village Law does not specifically prohibit the Town Clerk from making-additions to the registration list within three days of the election, neither does it specifically provide that he may do so, and he had, of course, no authority to do so unless such authority was provided by law. Standing alone, the provisions of subdivision 2 might be construed as authorizing the procedure adopted, but when the provisions of subdivision 3 are read tog-ether with those of subdivision 2, the intent of the statute becomes clear, to limit the Clerk’s authority to make additions to the list to a day specified in the notice, at least (not less than) three days prior to the election. Additions, if any, were to be made publicly, and on a day, and during the times, specified in the notice, and *1055 not on any other day or at any other time, except by court order, if registration of a voter had been unlawfully refused, or perhaps by the inspectors of election in the case of a voter whose name was required by law to be included in the list and had been left off through mistake, error, or neglect (see Election Law, § 331, subd. 4).
It is unlikely that the Legislature intended, in view of the provision in the statute that additions to the list should be made publicly and at a specified time, that such additions could be made on three or more days, but that notice should be given to the electors with respect to proceedings on one day only.
The object of the election laws is to secure the rights of duly qualified voters, and not to defeat them (People ex rel. Hirsh v. Wood, 148 N. Y. 142, 146). In providing for the registration of voters, however, the Legislature prescribes the method- of proof for ascertaining the electors who are qualified to cast votes. Such regulations are part of the machinery of elections, and contribute to their orderly conduct and fairness. They are safeguards against frauds, for they are a means of furnishing all the electors of the district with the knowledge of what persons will claim the right of voting at a sufficient time in advance of the election for them to act upon it, if necessary (People ex rel. Stapleton v. Bell, 119 N. Y. 175, 181, 182). It was to give adequate notice to the electors of the district, of the identity of those who intended to vote, that the Legislature provided for additions to the registration list only on a day specified, not less than three days prior to the election. It follows that the names of the voters who were registered on August 15 and 16 were improperly added to the registration lists and, while, as respondents assert, it may be unlikely that the result of the election would be changed if they had not voted, that question may not be decided on the present record. Unquestionably, the result may have been affected. Whether the error was such as to invalidate the election, however, is a different question, which in the court’s opinion should be answered in the negative.
There is no claim that the Town Clerk or anyone else acted fraudulently in registering, or in making application for the registration of any of the voters whose names were added to the list. Apparently, and for all that appears to the contrary, the Clerk acted in good faith and in accordance with his interpretation of the statute, and everyone connected with the election, if they gave the matter any consideration, believed that the procedure adopted was legal and proper. At least neither the petitioners, nor anyone else, complained about, it, or sought- to *1056 prevent the. registration of the voters on the 15th and 16th, and no one challenged any vote at the election on the ground that the voter had been registered on either of those dates.
As has been stated, no qualified elector was denied a vote, and no unqualified elector voted, and the election appears to have been honestly and fairly conducted.
The error complained of was due entirely to an erroneous construction of the controlling statute by the Town Clerk, and it appears that those in favor of incorporation, as well as those opposed, took advantage of the additional registration days to add their own names or the names of other qualified voters to the registration list. Under the circumstances, no reason appears why the voters in the district who voted against incorporation should be disfranchised for the mistake of an election officer in performing a duty cast upon him (cf. People ex rel. Hirsh v. Wood, 148 N. Y. 142, 146, 147, supra; Bramley v. Miller, 270 N. Y. 307, 315; Matter of Reich v. Bosco,. 21 Misc 2d 973, 976, affd. 9 A D 2d 919), particularly in view of the apparent acquiescence of the petitioners and the other electors who supported the proposal to incorporate the village, in the procedure adopted (cf. Matter of Cosgrove, 292 N. Y. 115; Matter of Commer dinger v. Vincent, 270 N. Y. 657; Matter of McGuinness v. DeSapio, 9 A D 2d 65, 73; Matter of Buechel v. Bosco, 9 A D 2d 916; Matter of Macy v. Clayton, 277 App. Div. 1131).
It is no answer for petitioners to assert that they were unaware of the illegality of the registration procedure until after the election was over. Ignorance of the law does not excuse persons so as to exempt them from the consequences of their acts, or failure to act. All persons are treated as though they know the law in passing on the character of their conduct (cf. Municipal Metallic Bed Mfg. Corp. v. Dobbs, 253 N. Y. 313, 317).
One further question must be decided. The petitioners have moved to strike out the answer of the Town of Harrison on the ground that the town was not made and is not a party to this proceeding. Neither the title of the proceeding nor the petition names any person as respondent. As required by the statute (Village Law, § 3-326) however, the petition and supporting papers were served on the Town Clerk. Apparently this requirement of the statute was intended to give notice to the town, and to permit the town, an obviously interested party to answer the petition and to participate, in the proceeding. In any event the statute (§ 3-324) provides that further notice shall be given to such persons as the court may direct. If the town had not appeared and answered, the court would have at least directed *1057 that it he given a further opportunity to do so. The motion is denied.
The respondents are entitled to judgment dismissing the petition, and declaring that the election held on August 17, 1967, to determine the question of the incorporation of the proposed Village of Purchase was and is valid. Judgment is directed to he entered accordingly, without costs. (See Village Law, § 3-324).